# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

      vs.

JOSE ALFREDO CRUZ,

      Defendant.

CRIMINAL ACTION NO.:
1:07-CR-00145-WSD-LTW

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND ORDER CERTIFYING DEFENDANT READY FOR TRIAL

Pending before the Court are Defendant Jose Alfredo Cruz's ("Defendant") Motion to Suppress Evidence and Motion to Suppress Statements. Docket Entries [58-59]. The Government has filed a response in opposition. Docket Entry [159]. On August 8, 2007, this Court held an evidentiary hearing on Defendant's motions. Docket Entry [62]. After the transcript was filed, the parties filed post-hearing briefs. Docket Entries [136, 159]. On September 4, 2007, a First Superseding Indictment was filed against Defendant and others. Docket Entry [107]. A pretrial conference was scheduled for October 15, 2007, but was not held at Defendant's request. Docket Entry [139]. On November 23, 2007, Defendant filed a reply to the Government's post-hearing brief. Docket Entry [160]. Accordingly, the case is now ready for a ruling.

For the reasons set forth below, this Court **RECOMMENDS** that Defendant's Motion to Suppress Evidence and Motion to Suppress Statements be **DENIED**.  Docket Entries [58-59].

## BACKGROUND FACTS

On April 6, 2007, Drug Enforcement Administration Agents ("DEA") in Atlanta intercepted a series of telephone calls pursuant to a Title III wiretap on a target by the name of Sol Rey.  (Transcript of August 8, 2007 Suppression Hearing ("Tr.") at  9).  DEA Special Agent ("SA") Lourdes Bowen testified that intercepted telephone calls on April 6, 2007, revealed that a customer in North Carolina by the name of Magaro appeared to be arranging a drug transaction in Atlanta for the morning of April 6, 2007.[1]  (Tr. at 8-9).  Magaro was planning to travel to Atlanta on April 7, 2007, to purchase ten kilograms of cocaine from Sol Rey.[2]  (Tr. at 9, 11).  As a result, on April 7, 2007, DEA

---

[1]SA Bowen testified that DEA had previously intercepted calls related to Magaro obtaining cocaine from two other DEA targets, Luterio and Tiente.  (Tr. at 10).  Tiente was located in Mexico and Luterio was still located in Atlanta.  (Tr. at 10).  SA Bowen also testified that both Sol Rey and Luterio worked for Tiente, and that intercepted calls indicated that Tiente, in Mexico, was trying to put together drug loads and ship them to the Atlanta area.  (Tr. at 11-12).

[2]SA Bowen further testified the intercepted calls indicated that Sol Rey (later identified as Jaime Sol Rey, a co-defendant in this case) was attempting to obtain the ten kilos from ten separate distributors, or sources of supply.  (Tr. at 15-16).

agents set up surveillance near Sol Rey's apartment (1635 Pirkle Road). (Tr. at 13). Based on intercepted telephone calls, Magaro told Sol Rey that they would meet at the same location that they had met in the past. (Tr. at 13). Agents followed Sol Rey, driving a Volkswagen Jetta, and two individuals in a Toyota Tacoma driving in tandem with the Jetta to a suspected drug meeting place (a strip shopping center located at the intersection of Beaver Ruin and Indian Trail), where they met two individuals in a Ford F-150. (Tr. at 8-9). All three vehicles were followed to a billiards hall, El Plazio, on Cruse Road. (Tr. at 14). Agents witnessed an individual, later identified as Magaro, get into the Jetta with Sol Rey, leave El Plazio Billiards, and travel to a residence on Lyndon Drive. (Tr. at 14, 40). The Ford F-150 and the Toyota Tacoma both remained in the El Plazio Billiards parking lot. (Tr. at 14-15). The Jetta moved from the Lyndon Drive residence to another residence on Arondale, which was located in close proximity to the billiards hall. (Tr. at 15). The Jetta remained at the Arondale residence for a couple of minutes and then returned to El Plazio Billiards. (Tr. at 15). Intercepted telephone calls indicate that Sol Rey was talking with different individuals during this time in an effort to obtain cocaine. (Tr. at 16). A short time later, agents observed Sol Rey and Magaro get into the Toyota Tacoma and drive back to the Arondale residence, where they remained for approximately twenty to twenty-five minutes. (Tr. at 16-17, 42). When

3

the Toyota Tacoma returned to El Plazio Billiards , SA Bowen testified that she observed Sol Rey and Magaro exit the vehicle. (Tr. 16, 18, 42). Sol Rey then walked towards his vehicle (the Jetta), and Magaro walked toward the Ford F-150. (Tr. at 18, 42). Two individuals exited the Ford F-150 and walked to the Toyota Tacoma. (Tr. at at 18, 32). SA Bowen observed that Defendant was sitting inside the Ford F-150. (Tr. at 32-33). Agents observed all three vehicles leave in tandem. (Tr. at 18).

DEA SA Keith Cromer testified that based on all of the intercepted calls and the events observed through surveillance, it was clear that the money to pay for the ten kilograms of cocaine was inside the Toyota Tacoma. (Tr. at 54-56, 63). Likewise, SA Bowen testified that based on the calls and surveillance, it was clear that Sol Rey and Magaro (in the Jetta) had gone to see the drugs and then went back to pick up the Toyota Tacoma in order to execute the exchange, *i.e.*, hand off the money and pick up the drugs. (Tr. at at 17-18, 33).

Agents observed the three vehicles travel in tandem to Interstate 85 and Pleasant Hill, at which point the Jetta broke off and the Ford F-150 and the Toyota Tacoma went to a Marriott hotel and parked. (Tr. at 19, 43). Defendant and Magaro were in the Ford F-150. (Tr. at 18, 25, 28-30). Two other individuals were in the Toyota Tacoma. (Tr. at 27). Upon arriving, Defendant went inside the Marriott to get a room; agents then

AO 72A
(Rev.8/82)

approached, detaining the individuals inside the two vehicles and Defendant inside the Marriott. (Tr. at 19, 34, 43). These agents, including a marked unit, ran their vehicles' lights and sirens, and the agents themselves were attired in full raid gear, *i.e.*, DEA vests, tactical holsters, helmets, and guns. (Tr. at 19-20). The agents also had their weapons drawn. (Tr. at 20, 44). Defendant and the other individuals were placed in handcuffs for officers' safety. (Tr. at 35, 48).

At some point prior to 12:25 a.m. on April 8, 2007, a K-9 present at the scene alerted positive to drugs being inside the Toyota Tacoma. (Tr. at 24-25, 45, 50). Additionally, agents could smell a strong chemical odor-characteristic of the unique odor cocaine in kilogram quantities emits-emanating from the Toyota Tacoma. (Tr. at 26, 50, 61). Agents subsequently searched the Toyota Tacoma and located ten bundles of cocaine in two "trap" compartments inside the vehicle. (Tr. at 26-27, 57-58, 68).

Later, at approximately 12:25 a.m. (after Defendant was handcuffed and the scene was secured), all weapons were re-holstered and SA Bowen advised Defendant of his rights pursuant to <u>Miranda v. Arizona</u>, 384 U.S. 736 (1966), using a DEA Form 13-A card.[3] (Tr. at 20-24, 35, 45). SA Bowen testified that she is fluent in Spanish and that

---

[3]SA Bowen testified that she read Defendant his rights from a DEA form 13-A card as follows:

AO 72A
(Rev.8/82)

she spoke to Defendant primarily in Spanish.  (Tr. at 20-21).

After having been read his rights, Defendant stated that he understood his rights and that he was willing to speak with the agents.  (Tr. at 24).  Defendant stated that he drove to Atlanta with Magaro in the Ford F-150, and that it was only after they had arrived at El Plazio Billiards in Atlanta that Magaro told him they were in Atlanta to pick up cocaine.  (Tr. at  25).  Defendant also told SA Bowen that Magaro told him he would be paid $300 for the trip.  (Tr. at 25).  Defendant further stated that while at El Plazio Billiards, Magaro took the Toyota Tacoma to get the cocaine, and that he (Defendant) had also traveled with Magaro to Atlanta on one other occasion to pick up drugs.  (Tr. at 25).  SA Bowen's interview with Defendant lasted approximately twenty-twenty five minutes.  (Tr. at 45).  Defendant's statement began after the K-9 alert, but prior to the search of the vehicles.  (Tr. at 25, 45-46, 50, 61).

――――――――――――

    Before we ask you any questions, you must understand you have the right to remain silent.  Anything you say can be used against you in court.  You have the right to talk to a lawyer for advice before we ask you any questions and have a lawyer with you during questioning.  If you cannot afford a lawyer, one will be appointed for you before any questioning, if you wish.  Do you understand and are you willing to answer some questions?

(Tr. at 23-24; Govt. Ex. 1).

6

## DEFENDANT'S MOTIONS TO SUPPRESS

### A.   Motion to Suppress Evidence

Defendant moves to suppress all evidence seized during the above-described warrantless arrest on the grounds that the agents lacked articulable reasonable suspicion to detain him and probable cause to arrest him.  Docket Entries [58, 136].  Responding in opposition, the Government argues that reasonable suspicion to detain, as well as probable cause to arrest Defendant was present.

Law enforcement officials may justifiably detain an individual without probable cause and without running afoul of the Fourth Amendment if they have reasonable suspicion to believe that an individual has engaged in or is about to engage in criminal activity.  United States v. Arvizu, 534 U.S. 266, 273 (2002); Terry v. Ohio, 392 U.S. 1, 27 (1968);  United States v. Diaz-Lizaraza, 981 F.2d 1216, 1220 (11th Cir. 1993).  Although there is no bright line between an investigatory stop and a full-scale arrest, the degree of intrusion in the totality of the circumstances dictates when "a seizure has become too intrusive to be an investigatory stop and must be considered an arrest." United States v. Blackman, 66 F.3d 1572, 1576 (11th Cir. 1995) (citing United States v. Roper, 702 F.2d 984, 985 (11th Cir. 1983)).  Reasonable suspicion is also determined "from the collective knowledge of the officers involved in the stop."  United States v.

7

Mikell, 102 F.3d 470, 475 (11th Cir. 1996) (citing United States v. Williams, 876 F.2d 1521, 1524 (11th Cir. 1989)).  The reasonable suspicion determination permits law enforcement officials to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" Arvizu, 534 U.S. at 273 (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)); United States v. Briggman, 931 F.2d 705, 709 (11th Cir. 1991).  Therefore, none of the suspect's actions need to be criminal on their face, although taken together they can provide trained police with reasonable suspicion. United States v. Lee, 68 F.3d 1267, 1271 (11th Cir. 1995). Reasonable suspicion requires "considerably less than proof of wrongdoing by a preponderance of the evidence, or even the implicit requirement of probable cause that a fair probability that evidence of a crime will be found." United States v. Tapia, 912 F.2d 1367, 1370 (11th Cir. 1990) (internal citation omitted).

Applying the law to the facts of this case, this Court finds that the collective knowledge of law enforcement officials was  sufficient to warrant a reasonable belief that Defendant and others arrested with him, either had committed or were committing a crime.  The collective knowledge of all law enforcement officers present at the initial detention at the Marriott hotel included, but was not limited to: (1) intercepted telephone

8

calls indicating that a ten kilogram cocaine transaction was occurring, and (2) surveillance of Defendant and others driving vehicles in tandem to a suspected drug meeting place and different residences, which also coincided with the intercepted calls indicating that the money to pay for the ten kilograms of cocaine was in the Toyota Tacoma, and that Sol Rey and Magaro (in the Jetta) had gone to see the drugs, then went back to pick up the Toyota Tacoma in order to execute the exchange of money for drugs. (Tr. at 17-18, 33, 54-56, 63). In addition, the K-9's positive alert to the presence of drugs inside the Toyota Tacoma, and the subsequent search of the vehicle resulting in the seizure of ten bundles of cocaine provided both probable cause and reasonable suspicion that evidence of the drug deal, including but not limited to cocaine and/or large amounts of United States currency, would likely be found in one or more of the vehicles parked at the Marriott hotel and/or on the person of one or more of the individuals in the vehicles.

Defendant argues that he was not intercepted on any of the telephone calls and was not observed when Magaro was traveling to and from El Plazio Billiards to the residences from where the cocaine was believed to have been obtained. Docket Entry [136] at 2-3. Defendant further argues that he was only in the company of individuals "believed to have been committing a crime," which does not establish probable cause.

9

Docket Entry [160] at 2.  While the presence of a defendant during the commission of a crime alone is not enough to constitute probable cause, presence and additional factors that would lead a prudent person to believe that an offense has been or is being committed is sufficient to show probable cause.  United States v. Irurzun, 631 F.2d 60, 63 (5th Cir. 1980); United States v. Ashcroft, 607 F.2d 1167, 1171-72 (5th Cir. 1979) (upholding warrantless arrest of a defendant which took place in an apartment room other than the one where the drug transaction was taking place).  The additional factors may include the defendant's opportunity to overhear negotiations, the defendant appearing to coordinate with those party to the drug transaction, the defendant moving in tandem with the parties, or suggestions of preplanning such as the ability of those party to the transaction and the defendant to seek out and locate each other.  See generally Irurzun, 631 F.2d at 60-63.  In addition, it is certainly reasonable to infer that only individuals who are involved in some way would be allowed to be within close proximity to such large amounts of drugs and/or currency.  See United States v. Cruz-Valdez, 773 F.2d 1541, 1547 (11th Cir. 1985) (it is reasonable for a jury to conclude that "a prudent [drug] smuggler is not likely to suffer the presence of unaffiliated bystanders"); see also United States v. Lyons, 53 F.3d 1198, 1202-03 (11th Cir. 1995)(explaining that while it is true that "'mere presence' alone is not sufficient to

10

convict . . . presence is no virtue.  One who is present at or in the company of those clearly engaged in drug deals is skating on thin ice; and one whose knowing and willful presence crosses over into participation may drop through that ice into the penitentiary").

In this case, the agents observed the following: (1)  Defendant in the Ford F-150 with Magaro, (2) Defendant waiting at El Plazio Billiards in the Ford F-150 with the two individuals who had been in the Toyota Tacoma while Magaro went with Sol Rey to execute the exchange of money for drugs, (3) Defendant and Magaro drove in tandem with the Toyota Tacoma, carrying the drugs to the Marriott hotel, and (4) Defendant went inside the hotel to get a room.  (Tr. at 19, 34, 43).  Although Defendant was neither intercepted on the Title III wiretap, nor was not seen leaving North Carolina with Magaro, nor was seen handling the drugs, these facts do not negate a finding of probable cause based on the totality of the circumstances.  Accordingly, law enforcement agents collectively had probable cause to detain and arrest Defendant.

**B.**     **Defendant's Motion to Suppress Statements**

Defendant also argues that his custodial statements were the result of an illegal arrest and must be suppressed.  Because this Court has determined that there was probable cause to arrest Defendant, any statements made by him after his arrest were not the product of an unlawful arrest.  Instead, the evidence shows that Defendant was

informed of both the nature of the right being abandoned and the consequences of the decision to abandon those rights. (Tr. at 23-24). This Court finds, based on the record, that Defendant knowingly and voluntarily waived his Miranda rights prior to making any incriminating statements. This Court also finds that Defendant's post-Miranda statements were the product of his free will and deliberate choice, and were made without intimidation, coercion, or deception from the law enforcement officers. (Tr. at 20-24, 35, 45).

## CONCLUSION

For the foregoing reasons, this Court **RECOMMENDS** that Defendant's Motion to Suppress Evidence and Motion to Suppress Statements be **DENIED**. Docket Entries [58-59]. There are no further motions or problems pending before the undersigned to prevent the scheduling of this Defendant for trial. Therefore, this Defendant is **CERTIFIED READY FOR TRIAL**.[4]

---

[4]This Court observes that Defendant Cruz  has been indicted with additional defendants and that matters pertaining to such co-defendants are still pending. Pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(7), the time for commencing  Defendant's trial may be stayed until such time as all other Defendants have been certified ready for trial. Hence, it is not necessary to place the above-named Defendant's case on the calendar for trial at this time.

AO 72A
(Rev.8/82)

**SO ORDERED**, this <u>18th</u> day of JANUARY, 2008.

<u>s/Linda T. Walker</u>
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)